In re HESCON DEVELOPERS, INC., a California corporation, Debtor.

The OFFICIAL UNSECURED CREDITORS' COMMITTEE, for the Benefit of the ESTATE OF HESCON DEVELOPERS, INC., Plaintiff,

v.

CAPISTRANO NATIONAL BANK, in Receivership and the Federal Deposit Insurance Corporation as its Receiver and otherwise, Defendants.

Adv. No. C86–0867–H11.

Related Bankruptcy No. 82–2796–P11.

United States Bankruptcy Court, S.D. California.

Dec. 10, 1987.

---

Robert L. Rentto, Robert B. Titus, Stutz, Rentto, Gallagher & Artiana, San Diego, Cal., for OCC.

Daniel D. Zahner, Newport Beach, Cal., for Capistrano Nat. Bank.

Margaret M. Mann, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Saleens.

**MEMORANDUM DECISION**

JOHN J. HARGROVE, Bankruptcy Judge.

**I.**

At issue is whether the Official Creditors' Committee ("OCC") may maintain a cause of action against the Federal Deposit Insurance Corporation ("FDIC") under Cal. Civ.Code § 3439 (West 1970) for an alleged fraudulent transfer made to Capistrano National Bank ("CNB") prior to the FDIC's appointment as receiver for CNB.

The FDIC argues that pursuant to 12 U.S.C. § 1819, federal law applies to the OCC complaint, thereby precluding a cause of action under state law.

The OCC contends that 12 U.S.C. § 1819 confers the jurisdiction under which the FDIC can be sued, that the choice of law is a federal question, and that except in unusual circumstances, deference should be granted to state law in actions concerning the FDIC.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

**II.**

**FACTS**

On November 27, 1978, Herman and Jeanne Saleen formed Hescon Developers, Inc. ("the debtor"). In June of 1979, the debtor purchased five acres of land in Vista, California ("the Vista property") for approximately $485,500.

In 1980 the debtor obtained an unsecured loan of approximately $118,000 from CNB (the "CNB loan"). Repayment of the loan was guaranteed by Herman Saleen, individually. On January 20, 1982, Herman and Jeanne Saleen purchased the Vista property from the debtor, by assuming existing liabilities of $381,147.39, paying a $50,000 cash down payment and giving the debtor a note in the amount of $518,000, payable in full on April 15, 1982. On February 2, 1982, a deed of trust and assignment of rents and request for special notice was recorded with the San Diego County Recorder, encumbering the Vista property,

naming the Saleens as trustor and the debtor as beneficiary.

On April 15, 1982, Herman Saleen, as president of the debtor, reconveyed the trust deed on the Vista property to himself, individually, based on an alleged offset of antecedent debts which he claimed the debtor owed him. The $518,000 note was subsequently cancelled.

On July 6, 1982, the debtor filed a petition under Chapter 11 of the Bankruptcy Code.

On November 2, 1983, a grant deed was recorded with the San Diego County Recorder, executed by Herman and Jeanne Saleen, transferring the Vista property to S & S Investors ("S & S"), a California corporation. At approximately the same time, S & S purchased the Vista property from Herman and Jeanne Saleen for $712,575.45. In November of 1983, the debtor's CNB loan was in default (there is no evidence before the court regarding when the debtor defaulted on the CNB loan). Thereafter, sometime in November of 1983, Herman Saleen repaid all monies due CNB pursuant to his personal guarantee from the proceeds of the sale of the Vista property.

On April 5, 1985, the Comptroller of Currency declared CNB insolvent, appointed the FDIC as receiver and took possession of the business and property of CNB. Herman Saleen has testified that he was a founding shareholder of CNB.

On May 18, 1987, the OCC moved this court for standing to sue the FDIC in connection with the transactions discussed above. The motion was opposed by the FDIC. Prior to the resolution of the motion for standing, the OCC moved the court for leave to amend its complaint to include a cause of action based on Cal.Civ.Code § 3439 (West 1970). The FDIC opposed this request on the basis that federal law applies in controversies arising from the liquidation of a national bank.

At the hearing on September 24, 1987, the court granted the OCC's motion for standing to bring a cause of action under 11 U.S.C. § 549 against the FDIC. The court also granted the OCC's motion for standing to bring a cause of action under § 550, but granted it conditionally and dismissed that cause of action as premature.

In addition, the court elected to treat the FDIC's objection to the Cal.Civ.Code § 3439 (West 1970) claim as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim and took the matter under submission, requesting additional briefing on the matter.

## III.

### DISCUSSION

The following background discussion regarding the FDIC is particularly helpful:

The FDIC is a federal agency which insures bank deposits. As insurer, one of the primary duties of the FDIC is to pay the depositors of a failed bank. The FDIC has two methods of accomplishing this duty. The [first] method is to liquidate the assets of the bank and then pay the depositors their insured amounts, covering any shortfall with FDIC funds....

* * * *

To avoid the significant problems with liquidation, the FDIC whenever feasible employs a "purchase and assumption" transaction in which the FDIC attempts to arrange for another bank to "purchase" the failed bank and reopen it without interrupting banking operations and with no loss to the depositors. A purchase and assumption involves three entities: The receiver of the failed bank, the purchasing bank, and the FDIC as insurer. In most cases, the FDIC is appointed receiver by the appropriate banking authority and thus acts in two separate capacities: As receiver and as an insurer. *See, FDIC v. Ashley,* 585 F.2d 157 (6th Cir.1978).

As soon as the receiver is appointed the FDIC solicits bids from other banks for the purchase of the failed bank and the assumption of its liabilities. The bids represent the "going concern value" of the failed bank. After receiving the bids, the FDIC Board of Directors deter-

mines whether the purchase and assumption is feasible according to the statutory requirements of 12 U.S.C. § 1823(e). If a bid is accepted, the purchasing bank agrees with the receiver to buy the assets and assume the liabilities of the failed bank.

While the purchase of a failed bank is an attractive way for other banks to expand their operations, a purchase and assumption must be consummated with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. Because the time constraints often prohibit a purchasing bank from fully evaluating its risks as well as to make a purchase and assumption an attractive business deal, the purchase and assumption agreement provides that the purchasing bank need purchase only those assets which are of the highest banking quality. Those assets not of the highest quality are returned to the receiver, resulting in the assumed liabilities exceeding the purchased assets. To equalize the difference, the FDIC as insurer purchases the returned assets from the receiver which in turn transfers the FDIC payments to the purchasing bank. The FDIC then attempts to collect on the returned assets to minimize the loss to the insurance fund. In an appropriate case, therefore, the purchase and assumption benefits all parties. The FDIC minimizes its loss, the purchasing bank receives a new investment and expansion opportunity at low risk, and the depositors of the failed bank are protected from the vagaries of the closing and liquidation procedure. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982).

In the case at bar, the FDIC entered into a purchase and assumption transaction with Farmers & Merchants Bank of Long Beach, pursuant to its powers as receiver for CNB.

When the FDIC acts as receiver of an insolvent national bank it stands in the shoes of the insolvent bank and is required to marshal the assets of the bank for its shareholders and creditors. On the other hand, the FDIC in its usual corporate capacity functions as an insurer and overseer of the subject national bank. *FDIC v. Glickman,* 450 F.2d 416, 418 (9th Cir.1971); *British Columbia Investment Company v. FDIC,* 420 F.Supp. 1217 (S.D.Cal.1976).

Where the FDIC acts as a receiver of a national bank, suit against it should be brought in the same manner and in the same jurisdiction as if it were the national bank. *Freeling v. Sebring,* 296 F.2d 244 (10th Cir.1961); *DeLorenzo v. FDIC,* 259 F.Supp. 193, 197 (S.D.N.Y.1966). 12 U.S.C. § 1819 states in pertinent part that "all suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States and the United States District Court shall have original jurisdiction...." It is well established that this provision is not merely jurisdictional. The *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 455–56, 467–68, 62 S.Ct. 676, 678–79, 683–84, 86 L.Ed. 956 (Jackson concurring) (1942). Where, as here, the FDIC is proceeding in its corporate capacity, federal law applies. *FDIC v. Bank of America,* 701 F.2d 831, 834 (9th Cir.1983). The decision of Congress to apply federal law under § 1819 is not unique. The allowance of claims against the assets of an insolvent national bank is also a matter of federal law under 12 U.S.C. § 194. *FDIC v. Mademoiselle of California,* 379 F.2d 660, 662 (9th Cir.1967) (section relating to the right to ratable distribution of bank's assets to creditors during liquidation).

The OCC asserts that *Bank of America* held that federal law merely governs the choice of law question. However, this contention runs against the analysis used by the court in *Bank of America.* In deciding to apply Puerto Rican law, the *Bank of America* court first pointed out that there was no federal case law or federal statute dealing with the issue at bar. Only when no federal case law or statute applied was the court "free to apply the traditional common law technique of decision and draw upon all sources of the common

**30**

law."[1] *FDIC v. Bank of America,* 701 F.2d at 834; *FDIC v. Meo,* 505 F.2d 790, 793, n. 4 (9th Cir.1974); *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. at 472, 62 S.Ct. at 686.

In support of its argument, the OCC cites the case of *In re Anjopa Paper & Board Manufacturing Co.,* 269 F.Supp. 241 (S.D.N.Y.1967). However, the analysis in *Anjopa Paper* clearly does not support the position for which the OCC asserts it. *Anjopa Paper* involved a claim made against the FDIC by a bankruptcy trustee that transfers made to the FDIC by the debtor were preferential under § 60 and § 70(e) of the Bankruptcy Act. Section 70(e) specifically incorporated state law for the purpose of avoiding or recovering transfers made by a debtor. By contrast, the OCC seeks to apply § 548 of the Bankruptcy Code to avoid the subject transfers as fraudulent conveyances. Section 548 does not contain a provision making state law applicable under the Code.

■ Were § 548 the only federal law on the avoidance of fraudulent conveyances, the substantial similarity between § 548 and Cal.Civ.Code § 3439 (West 1970) would create a textbook situation in which the FDIC could be sued under the federal statute only. However, what the OCC fails to point out, but which is dispositive on the issue herein, is that the § 544(b) "strong-arm" clause of the Bankruptcy Code specifically gives "the trustee the power to avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim...." It is well settled that "applicable law" under § 544(b) includes state law. 4 *Collier on Bankruptcy,* § 544.03[1] (15th ed. 1987). Where the federal statute makes express or implied reference to state law, there can be no doubt that state law applies. *Anjopa Paper,* 269 F.Supp. at 253. Such reference clearly evinces Congress' intent to provide the debtor an additional remedy. *Anjopa Paper,* 269 F.Supp. at 254. Therefore, Cal.Civ.Code § 3439

(West 1970) is adopted by reference as federal law pursuant to the "strong-arm" clause of § 544(b).

Since the matter is before this court on a Fed.R.Civ.P. 12(b)(6) motion for dismissal for failure to state a claim, the court must construe the allegations of the complaint liberally and in the manner most favorable to the OCC. 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* para. 12.07[2.–5] (2d ed. 1985). The Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which a claim is based. All that is required is a short and plain statement of the plaintiff's claim and the grounds upon which it rests. Fed.R.Civ.P. 8(a)(2). "Notice pleading" is sufficient. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

While the OCC's complaint is not a model for the future, this court finds it to be sufficient. Since the Bankruptcy Code gives the OCC the right to attack this transfer pursuant to state law, fairness demands that the OCC not be prejudiced by its failure to recite the Code section which makes state law applicable. Therefore, this court holds that the OCC's third cause of action states a claim against the FDIC pursuant to federal bankruptcy law.

## IV.

## CONCLUSION

When the FDIC is sued while acting in its capacity as receiver of an insolvent national bank federal law applies. Section 544(b) of the Bankruptcy Code adopts "applicable law" for the purpose of avoiding any transfers of an interest of the debtor in property. In California, where the purported transfer occurred, § 544(b) adopts

---

**1.** More to the point, the court in *Bank of America* rhetorically states in the next paragraph "[w]hat, then, should we look to as federal law?"

*FDIC v. Bank of America,* 701 F.2d 831, 834 (9th Cir.1983).

Cal.Civ.Code § 3439 (West 1970) for the purpose of avoiding "fraudulent conveyances" pursuant to federal law. Therefore, the OCC's third cause of action states a claim against the FDIC.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankr.R. 7052. Counsel for OCC is directed to file with this court an Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.