**In re Robert Wayne SMITH and Johanna Lynn Smith, Debtors.**

**MICHAEL A. GRASSMUECK, INC., Trustee, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION and Southwestern Motors, Inc., dba Jim Vick's Southwestern Motors, Defendants.**

**Bankruptcy No. 686–08463. Adv. No. 687–5122.**

United States Bankruptcy Court, D. Oregon.

June 13, 1988.

---

298

G. Jefferson Campbell, Jr., Medford, Or., for plaintiff.

Douglas McCool, Eugene, Or., Michael Bodkin, Coos Bay, Or., for defendants.

### MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court on plaintiff's and defendant, Southwestern Motors, Inc.'s (Southwestern's) cross-motions for summary judgment. This is a preference action initiated by the trustee to avoid the defendants' security interest in an automobile. The parties' affidavits, exhibits and memoranda reveal the following undisputed facts:

1.  On or before April 15, 1986, Daniel and Phyllis Thomas traded in a 1984 Dodge Aries automobile (the car) to Southwestern. At that time, the car was subject to a valid perfected security interest held by United States National Bank (USNB).

2.  On April 15, 1986, Southwestern satisfied the security interest of USNB by paying to USNB the sum of $4,774.94 in

order to be in a position to sell the car to a retail customer.

3. On June 21, 1986, Southwestern sold the car to the debtors under a retail installment sales contract which was subject to defendant, General Motors Acceptance Corporation's (GMAC) approval. As part of the sale, the debtors traded in a 1979 Oldsmobile. The debtors took possession of the car this same date.

4. On June 24, 1986, GMAC approved the sale. Southwestern assigned the sales contract to GMAC, with GMAC reserving a right of recourse in the event of the debtors' default.

5. On June 27, 1986, Southwestern prepared its dealer's package of title transactions for the week ending June 27, 1986.

6. In that package, among other things, was the title to the car which included an application for title transfer and written powers of attorney executed by the Thomases and the debtors. The package also included a check for $176 which represented title transfer fees for nine separate automobiles, including the car.

7. On either June 30 or July 1, 1986, the package was delivered to the Department of Motor Vehicles (DMV). The $176 check was stamped July 1, 1986. The application for title transfer for the car was not stamped at that time. After receipt, Deena Rutledge, a DMV employee, examined the application regarding the car and noted that the application was not in proper form because the debtors' power of attorney accompanying it related to the wrong vehicle, that is, it related to the Oldsmobile which the debtors had traded-in, rather than the car which they had purchased.

8. On July 2 or 3, 1986, Ms Rutledge contacted Southwestern by telephone and advised about the improper power of attorney. She returned the application to Southwestern.

9. On July 10, 1986, Southwestern submitted the correct power of attorney and the application was then processed in due course.

10. On July 31, 1986, the debtors filed their petition for relief herein under Chapter 7 of the Bankruptcy Code.

11. Plaintiff is the duly appointed and acting trustee herein.

12. The debtors defaulted on the purchase contract by failing to pay the monthly payment due in October, 1986. Upon default, the contract and security interest was reassigned by GMAC to Southwestern.

### ISSUES

11 U.S.C. § 547 provides in pertinent part as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer- ...

(3) that creates a security interest in property acquired by the debtor-

(A) to the extent such security interest secured new value that was-

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 10 days after the debtor receives possession of such property; ...

The plaintiff seeks to avoid the creation of any purchase money security interest in the car in favor of defendants on the basis that such security interest was created and perfected within 90 days prior to the filing of the petition herein as provided for in 11 U.S.C. § 547(b)(4)(A) but perfected more than 10 days after the debtor received possession of the car as allowed in 11 U.S.C. § 547(c)(3).

Southwestern argues that their security interest in the car was perfected when the application for transfer of title was originally received by the DMV on July 1, 1986, within the 10 days provided for in 11 U.S.C. § 547(c)(3), thus, the plaintiff may not avoid the creation and perfection of the security interest. In the alternative, Southwestern argues that even if its lien is avoidable, it should be subrogated to the security interest in the car formerly held by USNB which it paid. Finally, Southwestern urges that even if its motion for summary judgment is denied and it is not entitled to subrogation, that the plaintiff is still not entitled to summary judgment as the plaintiff has not pled nor proven one of the elements of its prima facie case, that Southwestern has received more than it would receive if the security interest had not been created and Southwestern shared in the distribution of this Chapter 7 estate. 11 U.S.C. § 547(b)(5).

## DISCUSSION

■ The Oregon statute regarding perfection of security interests in vehicles as it existed prior to the amendment by the Oregon Legislature in 1987 [1] is O.R.S. 803.095. The statute provides in pertinent part as follows:

(5) Except as provided in subsection (6) of this section (dealing with vehicles held as inventory, not applicable here) or ORS 820.510, (concerning mobile homes) the exclusive means of perfecting security interest in a vehicle issued a certificate of title by the division is by application for notation of the security interest on the certificate of title in accordance with this section. All of the following apply to the creation of the security interest: ...

(d) *Except as provided in paragraph (e) of this subsection,* a security interest that is perfected as described in this subsection is perfected as of the date the application is received by the division. In order to establish the date of perfection under this subsection, the division, at the time the division first processes an application for a security interest, shall mark upon the application the date the division first received the application either by mail or by presentation to any office of the division. Proof of the date of perfection may be provided as described under O.R.S. 802.240.

(e) *The date the division receives an application to perfect a security interest as described in this subsection, does not establish the date that the security interest is perfected if the division determines that the application is not in proper form and so indicates upon the application in a manner showing the date placed on the application under paragraph (d) of this subsection is invalid.* (Emphasis added) (parenthesis added)

Plaintiff argues that the DMV date stamp conclusively establishes the date of perfection. In the alternative, the application as originally submitted was not in proper form. Thus under O.R.S. 803.-095(5)(d) and (e), perfection arose when the application was resubmitted in proper form and stamped on July 10, 1986, more than 10 days after the debtors received possession of the car. Southwestern argues that the application was initially in proper form and that the incorrect power of attorney was a non-material defect, as such, the application was sufficient and was received by the DMV on July 1, 1986, within 10 days from

1. The amendments became effective September 27, 1987.

the date the debtors received possession of the car.

O.R.S. 803.095(5)(d) provides that the DMV shall date stamp every application it receives when it first receives it. Then, pursuant to O.R.S. 803.095(5)(e), after examining the application, if DMV determines that it is not in proper form, it is to mark on the application that the original date stamp is invalid.

Here, the DMV did not date stamp the application when it was originally received. Assuming, without deciding, that perfection can be proven by means other than a DMV date stamp, it is undisputed that DMV's first receipt of the application was on July 1, 1986. Given this fact, DMV's failure to stamp the initial application is harmless error.

DMV, however, reviewed the application and returned it because the power of attorney submitted by Southwestern was the one pertaining to the debtors' trade-in, the 1979 Olds, rather than the car. The correct power of attorney was then provided and the corrected application was processed on July 10, 1986.

It appears from a plain reading of the statute that perfection took place on July 10, 1986. Ms Rutledge's determination to return Southwestern's application was proper.

A vehicle owner's signature is a material component of any application for transfer or creation of a security interest. O.R.S. 803.095(5)(a) provides in pertinent part as follows:

> The owner of the vehicle ... shall sign and enter the date on the appropriate space on the back of the certificate of title ... and shall deliver the certificate to the person in whom the security interest is created....

Here, DMV could not have issued a certificate of title to the car indicating the defendants' security interest thereon, without the signature of the debtors, either on the back of the certificate of title to the car or in a power of attorney referring to the car. The failure to include the proper power of attorney with the original application was a material defect.

This court finds that the security interest of the defendants was perfected more than 10 days after the debtors received possession of the car but within 90 days prior to the filing of the petition herein, thus, the security interest is avoidable by the trustee pursuant to 11 U.S.C. § 547.

■ Southwestern argues in the alternative, that even if its own lien fails, it is subrogated to USNB's lien which it paid off in order to sell the car. Southwestern relies upon *Clackamas County Bank v. Internal Revenue Service (In re Allen)*, 32 B.R. 93 (Bankr.D.Or.1983) for support. There, the court, in allowing a mortgagee priority over an intervening tax lien, reiterated long standing Oregon law on this issue, stating:

> A person who advances money to discharge a prior lien on real or personal property and takes a new mortgage as security will be subrogated under Oregon law to the prior lien as against the holder of an intervening lien of which he was excusably ignorant. 32 Bankr. at 95.

The purpose of the rule is to prevent unjust enrichment and protect the mortgagee's expectation that by paying off the prior lien it is getting clear title. The rule recognizes that the intervening lienor is not prejudiced because it is in exactly the same position it would have been in had the senior lien not been paid off.

Southwestern's reliance upon *Allen* is misplaced. Here, there was no intervening lien when Southwestern paid off USNB. Southwestern got exactly what it paid for, clear title to the car which it later sold to debtors.

It follows that Southwestern's motion for summary judgment should be denied.

■ As its final argument, Southwestern urges that summary judgment should not be granted to the plaintiff since the plaintiff has failed to plead and prove one of the prima facie elements of its case, namely, that the defendants have received more than they would have received under this case had the security interest not been

untimely perfected as set forth in 11 U.S.C. § 547(b)(5).

The plaintiff has pled all necessary elements of its prima facie case. Plaintiff's complaint alleges in pertinent part as follows:

7. The transfer of the security interest from the Debtors to the Defendant GMAC is avoidable by the Plaintiff, under and virtue of 11 U.S.C. § 547.

8. On information and belief, Plaintiff alleges that the security interest of Defendant GMAC in the above described motor vehicle has been reassigned under a recourse agreement to Defendant Southwestern Oregon Motors, Inc., after demand by Plaintiff was made on Defendant GMAC for release of its security interest by reason of the avoidability of the transfer to it by the Debtors. Defendant Southwestern Oregon Motors, Inc. retook said security interest from the Defendant GMAC with notice of the avoidability of the transfer to Defendant GMAC by the Debtors and not in good faith. *Plaintiff's Complaint,* ¶¶ 7 & 8, pg. 2, lines 19–26, pg. 3, lines 1–3.

The court notes, however, from reviewing the answers filed by both defendants, that this element of the plaintiff's case has been put at issue on the pleadings.

Plaintiff has the burden of proof to establish all of the elements of its prima facie case under 11 U.S.C. § 547(b). *See* 11 U.S. C. § 547(g). Accordingly, plaintiff's motion for summary judgment must be denied as this court finds that there is a material issue of fact as to whether or not the defendants received more, by way of the creation and perfection of their security interest in the car than they would have received by sharing as a general creditor in this estate as provided in 11 U.S.C. § 547(b)(5). An order consistent herewith shall be entered.

This opinion shall constitute the court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52 as made applicable to this court by Bankruptcy Rule 7052; they shall not be separately stated.

### ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

This matter having come before the court upon motions for summary judgment filed by plaintiff and by defendant, Southwestern Motors, Inc., the court having reviewed the memoranda and supporting documents submitted by the parties, the argument of counsel, having entered its opinion herein and being fully advised in the premises;

Now, therefore, IT IS HEREBY ORDERED that the motion for summary judgment filed by defendant, Southwestern Motors, Inc. be, and it hereby is denied; and it is

FURTHER ORDERED that the motion for summary judgment filed by plaintiff be, and it hereby is denied.