**In re AUXANO, INC., Debtor.**

**Jack BROWN, Trustee, Plaintiff,**

**v.**

**Garland E. HARRIS, Evelyn Harris and ITT Financial Services, Defendants.**

Bankruptcy No. 88–00606–C.
Adv. No. 88–0661–C.

United States Bankruptcy Court,
W.D. Missouri, C.D.

March 28, 1989.

Norman W. Lampton, Columbia, Mo., for ITT.

James W. Riner, Jefferson City, Mo., for plaintiff/trustee.

R. Max Humphreys, Jefferson City, Mo., for defendants Harris.

Steven J. Bratten, Jefferson City, Mo., for debtor.

Jack E. Brown, Columbia, Mo., trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

### FACTS

Debtor, Auxano, Inc., was a Missouri corporation whose principal office was located in Cole County. Garland E. Harris was its president and one of its principal owners. Debtor entered into certain real estate leases and contracts with Wanda L. Gerken. When she filed several lawsuits against debtor in various counties where the involved real estate was located, debtor filed its petition for relief under Chapter 7 on February 10, 1988. Debtor subsequently filed a Motion to Dismiss the proceedings to which Ms. Gerken objected, alleging post-petition transfer of certain real estate

intended to defraud debtor's creditors. Dismissal was denied and the Trustee filed this adversary action to set aside the transfer of the real estate and a Deed of Trust executed to ITT Financial Services ("ITT"). In its Answer to the Trustee's Complaint, ITT claims that as a good faith purchaser who gave value without knowledge of the voidability of the transfer, it is protected from any action to avoid the transfer. ITT further cross-claimed for the principal and interest accruing under the Harrises' Note, in addition to costs and fees. This Opinion follows the trial of those issues.

Evidence adduced at the hearing showed that the Veterans Administration ("VA") transferred to debtor by Special Warranty Deed two tracts of real estate located in Callaway County, Missouri. Although that Deed was dated February 1, 1988, the closing was not held until early March—probably March 4, 1988, the date on which said Deed was recorded. On that same date, debtor transferred the real estate to Garland E. Harris and Evelyn L. Harris, husband and wife, by General Warranty Deed. Garland Harris was debtor's president and majority stockholder. Debtor paid the VA $55,000 for the property. The Harrises allegedly paid debtor $90,000 for the property. This would appear to be an excellent deal for debtor from the face of these transactions, but closer examination reveals some unusual dealings as outlined hereunder.

For the ostensible purpose of financing the purchase of the real estate from the VA, ITT advanced $70,000 by check payable to debtor and to the Harrises. The Harrises executed a $70,000 note to ITT secured by a Deed of Trust on the real estate which was duly recorded in the Callaway County Recorder's Office on March 4, 1988. The Harrises then paid $11,000 of that money back to ITT to release a lien which ITT held on a piece of real estate that the Harrises owned and in which debtor had no interest. Debtor paid the VA $55,000 for the real estate and thus retained only $4,000 of the $70,000 advanced by ITT. The Harrises paid debtor the remaining $20,000 of the alleged $90,000 sale price by returning 2,998 shares of debtor to debtor. According to an affidavit signed by debtor's secretary and transfer agent, this stock had a par value of $6.67 per share.[1]

As to the subject real estate, the VA had appraised it at $62,000 at the time of contracting to sell it to debtor. Debtor had expended several thousand dollars in materials and several thousand dollars in labor to rehabilitate the property. ITT subsequently appraised the property for $87,000 when it made the $70,000 loan. Thus, with the real estate having a value of approximately $87,000 and a purchase price to debtor of $55,000, debtor's equity in the property was roughly $32,000. What did debtor receive for the transfer to the Harrises? Debtor obtained relief from the $55,000 purchase price, some $4,000 in cash, and treasury stock without value because debtor either was or became insolvent at the moment of transfer. The remaining $11,000 did not go to debtor, but was used instead for the Harrises' personal benefit to pay off their obligation to ITT which was secured by their own real estate. What value then did ITT actually part with through its loan to the Harrises? Because the Harrises immediately handed back to ITT $11,000 of the $70,000 "loan" to satisfy a separate personal debt with ITT, the Court finds that ITT only gave value of $59,000 to this debtor.

## QUESTIONS PRESENTED

1. Whether the Trustee may avoid the post-petition transfer of the real estate

---

1. That debtor's stock could have such a stated par value is insupportable from the record. At the time the stock was returned, debtor had less than $1,000.00 in the bank and had trade debts in excess of $13,000.00. Further debtor was party to lease-purchase contracts on three pieces of real estate on which it was in default and on which it was being sued. Although it is not necessary to the disposition of the question presented, this Court finds it instructive to these proceedings to emphasize that it has no difficulty finding that debtor was insolvent at the time of its transfer of the two tracts of real estate to the Harrises. That insolvency arose at the instant of the transfer because debtor had only $5,000.00 in assets ($1,000.00 plus the $4,000.00 it received), while at the same time owing $13,048.18 in unpaid bills plus the liabilities in the three pending lawsuits. The Harrises' stock was, in a word, worthless.

from the debtors to the Harrises and thence to ITT and recover the real estate from ITT.

2. If the Trustee has the power to avoid the transfer, what may the Trustee recover from ITT and what remaining interest does ITT have in the property?

## DISCUSSION

### I. *Jurisdiction of the Court*

■ On procedural grounds, ITT objects to the Court's jurisdiction in this adversary proceeding stating that the matter is a non-core proceeding. Simply calling a proceeding "non-core" does not make it so. The Trustee's Complaint to avoid the disputed transfer and recover the asset involved necessarily invokes the avoidance and recovery provisions of 11 U.S.C. Section 549 and 11 U.S.C. Section 550, respectively. Because the transfer occurred post-petition, any hope the Trustee has of avoiding it lies in Section 549 which governs post-petition transactions. Although the parties' pleadings do not expressly refer to Section 549, it is incumbent upon the Court to find that the parties impliedly consent to having their pleadings conform to the evidence. Fed.R.Civ.P. 15(b). Thus, this action shall properly be treated as one to avoid a post-petition transfer under Section 549. To ITT's jurisdictional objection, the Court can and need only say that Section 549 proceedings are core proceedings. 28 U.S.C. Section 157(b)(2)(E)[2]; *In re Global*

2. Section 157(b)(2)(E) provides in pertinent part:
(b) Bankruptcy judges may hear and determine ... all core proceedings arising under title 11 ...
(2) Core proceedings include, but are not limited to—
(E) orders to turn over property of the estate.
Further support for a bankruptcy court's jurisdiction in a Section 549 avoidance action is found in Bankruptcy Rule 6001 which provides that any entity asserting the validity of a transfer under Section 549 has the burden of proof. Commentary to this rule notes that it should be read in conjunction with Rule 7001(1), which provides that, with certain exceptions not applicable to Rule 6001 or Section 549, an action to recover the estate's

*Intern. Airways Corp.*, 81 B.R. 541, 543 (W.D.Mo.1988).

### II. *Avoidability of Post-petition Transfers Under Section 549*

■ The language of Section 549(a) unequivocally provides that all post-petition transfers of the bankruptcy estate's property that are not authorized by the court may be avoided by the trustee unless they are excepted from that rule's operation. Section 549(a); *In re Robbins*, 91 B.R. 879, 885 (Bankr.W.D.Mo.1988). Application of the trustee's avoidance powers under Section 549(a) involves a four-part inquiry: (1) did a transfer occur; (2) was it a transfer of property of the estate; (3) did the transfer occur after commencement of the case; and (4) was the transfer without the court's authorization. Section 549 does not apply unless all four of the above inquiries can be answered affirmatively. *Id.*

■ The Court need not examine the disputed transaction at any length to conclude that it is an avoidable transfer under Section 549(a). Taking a security interest in real estate is a "transfer" as that term is defined in 11 U.S.C. Section 101(50).[3] *In re Robbins*, 91 B.R. 879, 885 (Bankr.W.D.Mo. 1988).

The real estate was property of the estate that was transferred after debtor had filed its petition for relief and without the Court's authorization.

property is an adversary proceeding governed by the Rules. Norton's Bankruptcy Law and Practice, Bankruptcy Rule 6001, Editors' Comment (1983); *see* 9 *Collier on Bankruptcy* Section 7001.04 (15th ed. 1987) (adversary proceedings governed by the Rules include actions to set aside post-petition transfers under Section 549; *see also Matter of Billick*, 67 B.R. 670, 671 (Bankr.W.D.Mo.1986) (bankruptcy court has jurisdiction if property is property of estate, and action to recover such property is adversary action pursuant to Rule 7001).

3. Section 101(50) defines a "transfer" as "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or an interest in property ..."

### A. Exception to the Avoidance Powers Under Section 549(c)

One of the ways in which the trustee's avoidance powers under Section 549(a) are limited is found in Section 549(c)[4] Section 101(50) defines a "transfer" as "... every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property or an interest in property ..." which essentially provides that the trustee may not avoid transfers of realty to good faith purchasers for present fair equivalent value and without knowledge of the commencement of the case, if a copy or notice of the petition has not been filed in the recording office of the same county where the property is located. Such purchasers who, prior to the petition's filing, have given less than present fair equivalent value, receive protection in the form of a lien to the extent of any present value given. The purpose of Section 549(c) is to protect an unsuspecting purchaser against a fraudulent debtor selling real property. *In re Purnell*, 92 B.R. 625, 629 (Bankr.E.D.Pa.1988). The evidentiary burden under this provision is nevertheless placed upon its hopeful beneficiaries by way of Bankruptcy Rule 6001 which provides that any entity asserting the validity of a transfer under Section 549 has the burden of proof. *See In re Robbins*, 91 B.R. at 885–86; *In re Purnell*, 92 B.R. at 629. ITT must, therefore, prove that it acquired its interest in the subject real estate from the Harrises for its present fair equivalent value without knowledge of debtor's bankruptcy.

### 1. *"Good Faith" Under Section 549:*

As to what constitutes good faith, this Court has previously opined that its presence turns on "whether the transaction carries the earmarks of an arms-length bargain" under the circumstances. *In re Robbins*, 91 B.R. at 885–86 (citing *Inland Security Co. v. Estate of Kirshner*, 382 F.Supp. 338 (W.D.Mo.1974)). Alternatively stated, good faith does not exist when a transferee possesses enough facts that would induce a reasonable person to investigate whether the debtor was in bankruptcy or that such occurrence was imminent. *See In re Concord Senior Hous. Found.*, 94 B.R. 180, 183 (Bankr.C.D.Cal.1988); *In re Nevada Implement Co.*, 22 B.R. 105 (Bankr.W.D.Mo.1982). In the context of Section 549, such an investigation would reveal to the transferee that the transferred property belonged to the debtor's bankruptcy estate. *See In re Concord Senior Hous. Found.*, 94 B.R. at 183 (subsequent transferee with knowledge or reason to know that initial transfer was an unauthorized one from bankruptcy estate lacks good faith).

The record is devoid of any evidence suggesting that ITT was acting in anything but good faith in its dealings with the Harrises. ITT's loan check was, in fact, indorsed by debtor's president and secretary which could only further affirm to ITT that debtor was solvent and conducting business as usual, thus suppressing any hint of debtor's pending bankruptcy. There was no evidence that ITT was in possession of any facts during the formation of this arms-length transaction that would indicate that debtor was in bankruptcy. It would appear that the Harrises effectively duped ITT just as they set out to hold off Ms. Gerken by abuse of the bankruptcy system and to "gut" their corporation of any value before the Trustee could take action.

---

**4.** Section 549(c) provides that:

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

## 2. *"Knowledge" Under Section 549(c):*

To gain the avoidance exception under Section 549(c), a transferee must, in addition to good faith, prove that it was "without knowledge of the commencement of the case." "Knowledge" is not defined in the Code or in the legislative history, but is construed in this District to include constructive knowledge. *In re Robbins*, 91 B.R. at 886. *But see Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir.1986) (Section 550 "knowledge" means actual, not constructive notice). Constructive knowledge is knowledge of such facts or circumstances that would ordinarily cause a prudent person exercising the reasonable diligence expected of him to inquire and learn the critical facts. *In re Robbins*, 91 B.R. at 886. The Court cannot not envisage a situation in which a transferee could meet Section 549(c)'s good faith test without also satisfying its knowledge requirement. *See* 4 *Collier on Bankruptcy* Section 550.03[1] (15th ed. 1985) (treats the two terms as redundant). Perhaps the distinction in the context of this section, if any exists, is that good faith can be undermined by knowledge of a broader range of facts, whereas the knowledge requirement refers only to knowledge of the commencement of the case. The Court, however, need not resolve this esoteric debate in the matter at hand since it finds that ITT clearly meets the lack of knowledge requirement of Section 549(c).

The very reason the Court found ITT to have acted in good faith was that it did not know, nor had any reason to know of debtor's bankruptcy prior to recording its Deed of Trust on the property. To lessen a debtor's opportunity for fraudulent post-petition transfers, Section 549(c) requires recordation of the bankruptcy petition in every county where the debtor owns or has an interest in real property. 4 *Collier on Bankruptcy* Section 549.03 (15th ed. 1987). If notice is not recorded in a particular county, the trustee may not avoid a transfer of the estate's real property located in that county to a purchaser of the type described in this section. *Id.* Debtor's bankruptcy petition and all subsequent filings were made in Cole County and in no other county. The subject real estate, on the other hand, is located in Callaway County which is where all transfers and encumbrances pertinent to the property, including ITT's Deed of Trust, were recorded. Further, since ITT was not a creditor of debtor, ITT was not included on debtor's mailing matrix for notice of all matters pertinent debtor's bankruptcy. *See In re Purnell*, 92 B.R. at 631 (creditor's inclusion on scheduled list of creditors suggested creditor had notice of bankruptcy prior to recordation of deed).

## 3. *"Present Fair Equivalent Value":*

The final requirement under the Section 549(c) exception to avoidance is that the good faith purchaser without knowledge of the bankruptcy must also show that it gave "present fair equivalent value" for the real estate. This term is not defined in the Code. Instead, its meaning must be shaped through case-by-case applications that are consonant with both its terms and the intended object of Section 549. Any meaningful evaluation of the value concept utilized in Section 549(c) requires the Court to consider the entire transaction, namely, what the transferee got and what it gave up in return. *In re Burke*, 60 B.R. 665, 669 (Bankr.D.Conn.1986). What ITT got was a Deed of Trust executed in its favor to secure a security interest of $70,000.00 in real estate appraised at $87,000.00. A nominal view of what ITT gave up suggests that after its transaction with the Harrises, the asset side of ITT's balance sheet witnessed a credit to its cash ledger of $70,000.00 and a debit to its loan receivables ledger of the same amount. A closer study of the entire transaction, however, reveals that ITT did, in fact, loan the Harrises $70,000.00, but the Harrises immediately returned $11,000.00 of that amount to ITT to satisfy a personal debt that was wholly unrelated to the subject transaction. The ink from the entry to ITT's books to record the loan barely had time to dry before another entry was due to reflect the return of the $11,000.00. Thus, when the complete exchange of value with the Harrises was over, ITT had, in reality, only

given $59,000.00 for its $70,000.00 security interest in the property. This amount represents 69% of the appraised value of the property.

■ At this juncture, readers familiar with the value issue in avoidance actions might be expecting a mechanical application of the so called *"Durrett"* test formulated by the Fifth Circuit in *Durrett v. Washington Nat'l Ins. Co.,* 621 F.2d 201 (5th Cir.1980). No such exercise, however, is forthcoming. In that case the court was construing the term "reasonably equivalent value" under Section 548(a)(2) and held a transfer avoidable for inadequate consideration because the transferee had paid the debtor 57.7% of the property's fair market value. In so holding, the court noted that it had been unable to find a decision which had approved a transfer for less than 70% of the property's market value. *Id.* at 203. With respect to the usefulness of the *"Durrett* test" in the context of a Section 549 action, this Court has considered and concurs with the view of another bankruptcy court which found *Durrett* to be non-instructive. *In re Powers,* 88 B.R. 294 (Bankr.D.Nevada 1988). Moreover, this Court doubts that the Fifth Circuit established a bright line test in *Durrett* with 70% as its threshold. That opinion merely indicated that it could not find any cases approving a transfer below that level. *Id.* at 296. Further, unlike Section 548(a)'s "reasonably equivalent value", Section 549(c)'s "present fair equivalent value" contemplates a more exacting standard, meaning either fair market value or something very close to it. *Id.* ITT received a $70,000 security interest in the Harris' property for $59,000. This is inadequate to satisfy the "present fair equivalent value" requirement and the Court, therefore, finds the transfer avoidable.[5] Finally *Durrett* is not the law in this circuit. The Eighth Circuit has refused to adopt any mechanical approach to determine reasonably equivalent value in favor of a more analytical test, to-wit: the question of wheth-er reasonably equivalent value was exchanged can only be answered after an evidentiary hearing. *In re Hulm,* 738 F.2d 323, 327 (8th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), *on remand,* 45 B.R. 523 (Bankr.D.N.D. 1984). The question is clearly one of fact that by necessity must be made on a case by case basis upon the facts and circumstances of each case. *In re Ozark Restaurant Equipment Co., Inc.,* 77 B.R. 686, 691–92 (W.D.Ark.1987). *See also In re Richardson,* 23 B.R. 434, 444–48 (Bankr.D. Utah 1982) (the question to be answered upon the facts in each case is how far below 100% of fair market value may the paid purchase price be and still be deemed reasonably equivalent).

The Court returns from this necessary digression to the paramount question, which is whether ITT gave "present fair equivalent value" for the real estate as prescribed by Section 549(c). The answer is that it did not. As noted earlier, Section 549(c) tolerates little deviation from fair market value. *In re Smith,* 88 B.R. 297 (Bankr.D.Ore.1988). The $59,000.00 ITT has been found to give in its exchange with the Harrises is 31% below the property's fair market value. This difference is a substantial deviation from the property's fair market value and, therefore, cannot be considered its fair equivalent. To find otherwise would be to unfairly award ITT a windfall benefit from its transaction with the Harrises at the expense of Debtors' bankruptcy estate. The Code does not protect lenders who secure personal loans to insiders of debtor corporations with estate property for the ostensible purpose of financing the insider's post-petition purchase of such property, when a portion of the loan proceeds are immediately returned to the lender to satisfy or reduce other obligations of the insider. This would pointlessly widen the otherwise narrowly construed protection afforded parties to post-petition transactions and would encourage

---

5. The Court has previously noted that the property's appraised value exceeded the face amount of ITT's loan and security interest. Even had ITT qualified for the exception, the value of the property in excess of the value given by ITT would be avoidable. *See* 4 *Collier on Bankruptcy* Section 550.02 n. 2 (15th ed. 1987).

similar abusive transactions. On the other hand, the Court cannot ignore the fair equivalent value ITT did give and thus grants ITT a lien of $59,000.00 on the property pursuant to the second sentence of Section 549(c).

### III. *Recovery of the Avoided Transfer Under Section 550*

 Similar to the mechanics of preferential transfers under Section 547, the Code bifurcates the treatment of avoidance and recovery issues concerning post-petition transfers. *See Matter of Midwestern Companies Inc.*, 96 B.R. 224 (Bankr.W.D. Mo.1988) (notes bifurcated treatment of avoidance and recovery concerning preferential transfers under Section 547) (citing *In re Deprizio Construction Co.*, 86 B.R. 545, 550 (N.D.Ill.1988)). Once the Court has found the transfer avoidable under Section 549, Section 550(a) [6] is applied to determine from whom the transfer may be recovered. *See 4 Collier on Bankruptcy* Section 550.02 n. 5 (15th ed. 1987) (trustee's action to avoid the transfer is normally coupled with action to recover the property transferred or its value). To the extent that a transfer has been avoided under Section 549, the subject property may be recovered under Section 550(a)(2) for the benefit of the estate from either or both the initial transferee and any secondary transferee of the debtor. H.R.Rep. No.

95–595, 95th Cong., 1st Sess. 375–76 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5876, 6331–32. Thus, in the instant case, the Trustee may seek to recover the property from ITT as the immediate transferee of the Harrises who were the initial transferees.[7] This right of recovery is limited, however, by subsection 550(b) which prevents recovery from certain secondary good faith transferees.[8]

Under Section 550(a)(2), the Trustee may seek to recover the transfer from ITT as the immediate transferee of the Harrises who were the initial transferees.[9] This right is limited, however, by subsection 550(b).[10]

Section 550(b) protects only subsequent transferees, and only if they take for value, in good faith, and without knowledge of the voidability of the avoided transfer. *In re Universal Clearing House Co.*, 62 B.R. 118, 125 (D.Utah 1988). Whether the initial transferee can make the same claim is irrelevant for purposes of determining the subsequent transferee's entitlement to the protection of Section 550(b). As a subsequent transferee, ITT need only prove that *it* gave value in good faith without knowledge of the voidability of the transfer to qualify for the protection of Section 550(b). *Id.* at 126.

**6.** Section 550(a) provides in pertinent part that:
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
(1) any initial transferee of such transfer ...; or
(2) any immediate or mediate transferee of such initial transferee.

**7.** A transferee of property from an agent of the debtor is typically considered an initial transferee. *4 Collier on Bankruptcy*, Section 549.-03[1] (15th ed. 1987). The Harrises, however, were not acting in any agent capacity of debtor in their transaction with ITT, thus making ITT an immediate transferee of an initial transferee.

**8.** Section 550(b) provides that:
(b) The trustee may not recover under section (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowl-

edge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

**9.** A transferee of property from an agent of the debtor is typically considered an initial transferee. *4 Collier on Bankruptcy* Section 549.03[1] (15th ed. 1987). The Harrises, however, were not acting in any agent capacity of debtor in their transaction with ITT, thus making ITT an immediate transferee of an initial transferee.

**10.** Section 550(b) provides that:
(b) The trustee may not recover under section (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

### A. Good Faith and Knowledge Under Section 550(b)

As to ITT's good faith, the Court previously found with respect to the avoidance question that ITT was acting in good faith in its transaction with the debtor and the Harrises. A transferee that has met its burden of proving good faith as that term is used in Section 549(c) has likewise met that burden for purposes of Section 550(b).

Consistent with the knowledge requirement of Section 549, that term's use in Section 550 does not impose a duty upon the transferee to conduct an independent investigation into the voidability of the transfer, provided the transferee lacks the information necessary to support a reasonable inference of knowledge. *Bonded Financial Services v. European Amer. Bank*, 838 F.2d 890, 897–98 (7th Cir.1988). Unlike Section 549, which looks for the transferee's knowledge of the commencement of the case, Section 550(b) speaks of knowledge of the voidability of the transfer. The latter suggests a broader inquiry, particularly as to what ITT knew or had reason to know about the Harrises acquisition of the property and the status of debtor's financial condition. However, the Court finds that ITT did not possess any facts that would indicate it knew or should have known that its transaction with the Harrises might be voidable because of debtors' bankruptcy.

### B. Value Under Section 550(b)

Unlike Section 549(c) or various other provisions in the Code, the concept of value in Section 550(b)(2) is not modified or circumscribed by such words as fair or equivalent. The provision's legislative history offers no gloss on the term's meaning and the Court could not find any published authority squarely addressing the question of how much value must a transferee give before it may claim the protection of Section 550(b)(2). As Justice Brandeis once noted, "[v]alue is a word of many meanings." *Missouri ex rel. Southwestern Bell Tel. Co. v. Public Serv. Comm'n*, 262 U.S. 276, 310, 43 S.Ct. 544, 554, 67 L.Ed. 981 (1923) (Brandeis, J., concurring). Nevertheless, the statute's language and its intended purposes provide the Court with sufficient guidance to resolve the issue. First, a natural reading of Section 550(b)(1) requires the Court to look at what the transferee, ITT, gave up rather than what its transferror or any prior transferror received. *Bonded Financial Services. v. European Amer. Bank*, 838 F.2d at 897. The Court previously determined that ITT, in effect, parted with $59,000 in exchange for its $70,000 security interest in the property.

Second, in determining whether this is sufficient value to escape recovery by the estate, the Court must be forever mindful of the purpose of the avoidance and recovery powers—to preserve the assets of the estate. *Cf. Matter of Bundles*, 856 F.2d 815, 824 (7th Cir.1988) (preserving estate's assets is chief purpose of Section 548 avoidance powers). To this Court's mind, the most provident way of effecting this purpose is to ensure that the estate receive the fair market value of the property. *See Matter of Nevada Implement Co.*, 22 B.R. at 106 (estate is entitled to fair market value of debtor's interest in property); *Slutsky v. Michel Tire Co. (In re Vann)*, 26 B.R. 148, 9 B.C.D. 1393 (Bankr.S.D.Ohio 1983) ("the term 'value' connotes market value").

Having resolved that "value" in the context of Section 550(b)(1) means fair market value, the final question in this avoidance and recovery procedure concerns the exact form of the trustee's recovery. The Code offers no guidance as to when the Court should permit recovery of the value of the property rather than the property itself. As a general rule, it would seem that the Court's obligation to preserve and maximize the estate's assets, would best be met if the property in kind were returned to the estate. This would be particularly true where the property is of greater value to the debtor than to an innocent transferee. *See 4 Collier on Bankruptcy* Section 550.-02 n. 6 (15th ed. 1987) (stating the converse, that equity is best served if court orders recovery of the value of the property to the debtor if the property is more valuable to innocent transferee). The $59,-

000 given by ITT is woefully insufficient consideration for real estate that has been fairly appraised at $87,000, and is also not an even trade for the $70,000 it would undoubtedly like to retain. The Court, therefore, finds that ITT is not eligible for the exception under Section 550(b)(2) but that it shall retain a lien of $59,000 against the property.

### IV. *ITT's Cross Claim*

█ Concomitant with the Court's resolution of the primary questions presented, ITT's cross-claim with respect to the Harrises' Note has been resolved. ITT has a lien in the principal amount of $59,000 upon which interest shall accrue at the contract rate. To the extent that counsel for ITT is rightfully due any costs and attorney's fees, the Court shall gladly entertain a motion to that effect. As to ITT's claimed collection costs, there is nothing to recommend their recovery in this or any adversary proceeding. This is a predictable cost of doing business to ITT that is not properly recoverable in bankruptcy. ITT's claim for reasonable costs, attorney's fees, and collection costs totalling $5,000 is, therefore, DENIED. ITT is free to pursue the Harrises, the Harrises' property, or whatever they wish to do in state court. For the purposes of this action, ITT has a lien for $59,000.00 against the property.

### CONCLUSION

█ The transfer of the property to the Harrises is set aside and the Trustee shall take charge of same. ITT shall have a lien for $59,000.00 on the property. The state court is the appropriate forum for any litigation between ITT and the Harrises.

This Opinion shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

SO ORDERED.