In re Eradean WALKER, Debtor.

Eradean Walker, Plaintiff,

v.

Creative Loans, LLC, et al, Defendants.

Bankruptcy No. 00–29577.
Adversary No. 06–2382.

United States Bankruptcy Court,
E.D. Wisconsin.

April 16, 2009.

Barry S. Buckspan, Jeffery R. Myer, Milwaukee, WI, for Plaintiff.

Creative Loans, LLC, Costa Mesa, CA, pro se.

Head Financial Services, Inc., Costa Mesa, CA, pro se.

Nations Property Management, LLC, Costa Mesa, CA, pro se.

Laurie Bigsby, Law Office of Todd C. Buss, Pewaukee, WI, Patrick B. Howell, Milwaukee, WI, for Defendants.

Alliance Title Company, Woodland Hills, CA, pro se.

HFTA First Financial Corp., Prospect Heights, IL, pro se.

Cherri Redding, Milwaukee, WI, pro se.

Mercury Companies, Inc., Denver, CO, pro se.

FCO, Inc., Long Beach, CA, pro se.

Dana Capital Group, Inc., Irvine, CA, pro se.

Washington Mutual Bank, Seattle, WA, pro se.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

### *PRELIMINARY*

This case involves an alleged "equity stripping" scheme foisted upon Eradean Walker (hereafter "Walker"), the debtor in this chapter 13 case. Walker asserts, using her words, that she was "ripped off" and "tricked" into signing documents which she thought was for the purpose of refinancing her existing mortgages. In fact, however, what resulted was the transfer of her ownership in two homes. She brought this adversary proceeding against all parties who she alleges were responsible for her loss of these properties. When

this matter came on for trial on December 10, 2008, Walker stated that all she is requesting in this proceeding is a return to her of ownership in these properties located at 6589 North 84th Street, Milwaukee, Wisconsin ("84th Street property") and 3502 North 37th Street, Milwaukee, Wisconsin, ("37th Street property"). At the trial, she requested that her claim for damages in her amended complaint be dismissed, without prejudice.

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H), (K), and (O).

## THE PARTIES

### Walker

Walker filed a petition in bankruptcy under chapter 13 on October 13, 2000. Her chapter 13 plan was confirmed on November 26, 2001. At the time she filed her bankruptcy petition, she owned and resided in the 84th Street property. She also owned the 37th Street property, where her daughter resided. The transactions involving the loss of these properties occurred after she filed her chapter 13 case, which case remains open.

### Head Defendants

Creative Loans, LLC d/b/a Funding Foreclosures.Com; Head Financial Services, Inc. d/b/a Funding Foreclosures.Com; Nations Property Management, LLC; FCO, Inc.; and Dana Capital Group, Inc. (hereafter "Head Defendants") are all entities owned and controlled by an individual named Charles Head. The Head Defendants are the prime parties in this alleged scheme. Although Charles Head is not personally named as a defendant in this adversary proceeding, he is a named defendant in a criminal indictment for alleged violations of conspiracy to commit mail fraud, mail fraud, and conspiracy to commit money laundering, involving a series of alleged foreclosure rescue scams targeted against California homeowners in financial distress. This criminal case is pending in the Eastern District of California, Case No. 08–CR–0093.

### ASAP Financial, LLC and Cherryl Redding

ASAP Financial, LLC ("ASAP") was originally a defendant in this adversary proceeding but upon stipulation of the parties has since been dismissed. ASAP is no longer in business. Cherryl Redding ("Redding"), a mortgage loan broker who worked with ASAP and who claimed she was an "outside contractor," remains as a defendant. Redding is the person who made the initial contact with Walker and subsequently referred her to the Head Defendants.

### Gino and Amy Thurgood

The Thurgoods were contacted by the Head Defendants and agreed to act as purchasers for the 84th Street and 37th Street properties. They were straw buyers who purchased these properties in name only. Because of the Thurgoods' credit worthiness, mortgage loans were approved for them with new lenders in connection with their purchases of these properties. Under the Thurgoods' agreement with the Head Defendants for their role in these transactions, the Thurgoods were to receive from the Head Defendants $5,000 for each property they purchased. The record in this case is unclear if the Thurgoods, in fact, received any payment from the Head Defendants.

### Alliance Title Company and Mercury Companies

Alliance Title Company is a wholly-owned subsidiary of Mercury Companies. Both are defendants in this suit. Alliance Title Company prepared the closing statements and settlement statements in connection with the transactions involving the

sales of the 37th Street and 84th Street properties to the Thurgoods.

Lenders First Choice, another wholly-owned subsidiary of Mercury Companies, acted as agent for United General Title Insurance Co., the title insurance company which provided title insurance to the Thurgoods and to the new mortgage lenders when the properties were sold to the Thurgoods. Neither Lenders First Choice nor United General Title Insurance Co. are defendants in this suit.

Alliance Title Company has since filed for bankruptcy under chapter 7 in the Northern District of California on June 5, 2008 (Case No. 08–52979). Mercury Companies has also filed for bankruptcy under chapter 11 in the District of Colorado on August 28, 2008 (Case No. 08–23125).

### Washington Mutual Bank and Long Beach Mortgage Company

Washington Mutual Bank and Long Beach Mortgage Company were the new lenders who made the mortgage loans to the Thurgoods. Washington Mutual Bank holds the mortgage on the 84th Street property, and Long Beach Mortgage Company, a wholly-owned subsidiary of Washington Mutual Bank, holds the mortgage on the 37th Street property. Hereafter, when reference in this decision is made only to Washington Mutual Bank, it shall be referred to as "Washington Mutual." When reference is made only to Long Beach Mortgage Company, it shall be referred to as "Long Beach." When Washington Mutual and Long Beach are referred to collectively, they shall be referred to as "Washington Mutual Defendants."

### THE SCAM

In December of 2005, Redding, acting for ASAP, contacted Walker to explore possible refinancing of her mortgage debts on the 84th Street and 37th Street proper-

ties. Redding learned from her review of Walker's real estate tax records that Walker was delinquent in payment of real estate taxes. Redding thought Walker might qualify as a potential customer. However, upon further investigation, Redding testified that Walker did not qualify for a loan from her company. Redding then referred Walker to the Head Defendants.

In April of 2006, the Head Defendants, after contacting Walker, entered into agreements with her. Walker testified she thought these agreements enabled her to refinance her mortgage loans on the 84th Street and 37th Street properties. However, that was not what happened. The documents which Walker signed for the 84th Street and 37th Street properties in April of 2006 consisted of: (1) a Sales and Purchase Agreement for each property requiring Walker to convey title to these properties and fixing purchase prices of $139,000 for the 84th Street property and $132,000 for the 37th Street property and (2) a "Residential Lease and Sale Agreement" for each property which Walker signed as tenant under a 1–year renewable lease. Nations Property Management Inc. (one of the Head Defendants) was designated as the landlord on both leases. Neither lease contained a provision giving Walker the option to repurchase her properties. Walker testified that she signed all of these documents without having first contacted her attorney. When asked at the trial why she did not consult her attorney, Walker's response was that she made a mistake.

On August 8, 2006, Redding, upon request from the Head Defendants, met with Walker for the purpose of obtaining Walker's signature on warranty deeds for the 84th Street and 37th Street properties. Redding notarized Walker's signature on both warranty deeds. Redding testified

that Walker did not ask her any questions about the documents and that she simply asked Walker to sign them and Walker complied. Walker's version of what occurred, however, is different. She testified that she was pressured into signing and that Walker was "in a hurry." Redding acknowledged that she did not explain to Walker that the warranty deeds involved the sales of her two homes. Redding further testified that she received a fee for her role in these transactions. The amount of payment she received was never disclosed at the trial. Walker further testified that she was never told by anyone that her properties were being sold.

The real estate closings for these properties took place on or about August 25, 2006. Universal Mortgage Corp. (which held the mortgage on the 84th Street property) and HFC (which held the mortgage on the 37th Street property) were paid in full the mortgage balances due to each of them. Other closing costs (including unpaid real estate taxes) were also paid. In addition, the outstanding balance needed to complete Walker's chapter 13 plan was also fully paid to the chapter 13 trustee from the 37th Street property closing. After the payment of all the closing costs, approximately $61,000 remained (in connection with the 84th Street property) and $57,000 remained (in connection with the 37th Street property), which were labeled in the closing statements as "proceeds due seller." (Exhibits 30 and 33) No portion of these "proceeds due seller" was remitted to Walker. Instead, the proceeds were turned over to the Head Defendants, which were obtained by wire instructions and authorizations (Exhibits 35 and 36) containing the purported signature of Walker. Walker testified that her signatures on these wire instructions and authorizations are forgeries.

Walker further testified that, shortly after the closings, she learned for the first time in a telephone conversation with an individual known as "Dave from California" who she believes worked for Funding Foreclosures (one of the Head Defendants) that she had sold her two properties. It was at that point that she called her bankruptcy attorney, Barry Buckspan, who, having been informed of what happened, filed this adversary proceeding.

Walker and her daughter continue to reside in the 84th Street and 37th Street properties, respectively. Walker acknowledges that neither she nor her daughter have made any rent payments in connection with the Residential Lease After Sale Agreements. She added, however, that no demand was ever made for payment of rents. Walker further testified that she continued to pay real estate taxes on these properties (although it appears that there is some real estate tax arrearage which has accrued since these sales occurred). Walker also testified that she has continued to maintain property insurance on both properties.

### ARE THE TRANSFERS OF THE 84th ST. AND 37th ST. PROPERTIES VOID?

The testimony in this case has amply established that Walker was a victim of a scam perpetrated upon her by misrepresentations and fraudulent practices which caused her to unknowingly lose ownership of her properties. This court is satisfied that Walker never understood what she was signing in connection with these transactions. She is a 67–year old widow with a ninth grade education and was an easy mark for the Head Defendants.

Of course she should have contacted her attorney before signing the papers resulting in the transfer of ownership; but she was misled and taken advantage of by a

ruthless scheme orchestrated by the Head Defendants by misleading statements and misrepresentations. To be sure, Walker was, at times in her testimony, inconsistent and confused—particularly with respect to whether or not her signatures on the warranty deeds were genuine or forgeries. She ultimately acknowledged that these signatures were genuine, but further stated she did not know the significance of what she had signed. The following questions were asked by the court and responses made by Walker: (Tr. 121–122)

Question: All right. What's a grantor? What does a grantor mean to you?

Answer: That's me.

Question: I know, but what is it? What does it mean?

Answer: It means—

Question: What does the word "grantor" mean?

Answer: It means that I'm responsible once I sign my signature to taking responsibility of what I'm signing.

Question: You're saying that the term grantor means that that's your signature. Is that what you're telling me?

Answer: That I'm taking responsibility.

Question: Responsibility for what?

Answer: For whatever I'm signing.

Question: But do you know what the term grantor means?

Answer: No.

Question: Did anybody explain that word to you?

Answer: No.

Question: Did anybody tell you that grantor is the same as meaning that you're the seller. You know what the term seller is don't you?

Answer: Yes.

Question: If it said seller, what would that have meant to you?

Answer: It meant I sold my home.

Question: But what about the word grantor? What did that mean to you?

Answer: Well, you said seller.

Question: Pardon?

Answer: You just asked a question. You said—

Question: No, I'm saying before that. At the time you signed it, did you know that the term "grantor" meant seller?

Answer: No I didn't.

(Tr. 121–122)

Although Walker was confused in this part of her testimony, she was not confused and was consistent and unwavering when she testified that she believed she was only refinancing her loans and, further, that the signatures purporting to be her signatures on the wire instructions and authorizations, which paved the way for the release of the selling proceeds to the Head Defendants, were forgeries. Redding also testified that the signatures purporting to be her signatures on the wire instructions and authorizations were also not genuine. She could not, however, explain how her notary seal became affixed to these documents. Regardless of whether Redding's and Walker's signatures on the wire instructions and authorizations were genuine or forgeries, they were a part of the overall scam.

The record in this case has established that the transactions which resulted in the sales to the 84th and 37th Street properties to the Thurgoods violated the automatic stay under 11 U.S.C. § 362(a)(3) [1] as

---

1. Sec. 362(a) reads, in part, as follows:
 (a) ... a petition filed under section 301 ... of this title, ... operates as a stay, applicable to all entities, of—

 (3) any act to obtain possession of property of the estate or of property from the

acts to obtain possession of property of the chapter 13 estate and also violated 11 U.S.C. § 549(a)[2] as unauthorized post-petition transfers of property.

■ The 37th Street and 84th Street properties were assets of Walker's chapter 13 bankruptcy estate. No one can take any action to obtain possession of property of the chapter 13 estate without first receiving relief from the automatic stay. That was not done, and the actions in selling these properties to the Thurgoods without first receiving court approval violated § 362(a)(3). Redding testified that she was asked by Funding Foreclosures (one of the Head Defendants) to contact the chapter 13 trustee for a payoff balance under the chapter 13 plan, and she did so. She was told by an individual in the chapter 13 trustee's office that the trustee would not permit such sale. After Redding informed Funding Foreclosures of this response from the chapter 13 trustee, she was told "Don't worry. Everything's fine." (Tr. 48) But everything was not fine.

■ A majority of circuits, including the Seventh Circuit, have ruled that actions which violate the automatic stay are void, not voidable. *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984). In *Easley v. Petti-*

*bone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir.1993), the court declared:

> "Void" is defined as "an instrument or transaction (that) is nugatory and ineffectual so that nothing can cure it," *Black's Law Dictionary* 1573 (6th ed.1990); and that of no legal force or effect and so incapable of confirmation or ratification.

> ___

> We think that "invalid" is a more appropriate adjective to use when defining an action taken against a debtor during the duration of the automatic stay. Like the word "void", "invalid" describes something that is without legal force or effect. However, something that is invalid is not incurable in contrast to a void action which is incapable of being ratified.

■ Section 549 of the Bankruptcy Code provides a separate ground for avoidance of the transfers of the 84th Street and 37th Street properties to the Thurgoods. A violation of § 549, if proven, results in these transfers being set aside. In order to prove a violation under § 549, the following four elements must be established:

1. a transfer,

estate or to exercise control over property of the estate.

2. § 549. Post-petition transactions.
 (a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 (1) made after the commencement of the case; and
 (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.

 ———

 (c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchase of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

2. which occurred post-petition,

3. of property of the estate, and

4. which is not authorized by the court or by the Bankruptcy Code.

*See In re Watson,* 65 B.R. 9, 11 (Bankr. C.D.Ill.1986); *In re Allen,* 217 B.R. 952, 955 (Bankr.M.D.Fla.1998); *In re Auxano Inc.,* 96 B.R. 957, 960 (Bankr.W.D.Mo. 1989); *In re Mora,* 218 B.R. 71, 73 (9th Cir. BAP 1988).

■ The sales of these two properties to the Thurgoods were post-petition transfers of property of the estate which occurred in August of 2006, after Walker filed her chapter 13 petition on October 13, 2000. This chapter 13 case is still pending.[3] The transfers involved property of the estate. The transfers were never authorized by this court. Although § 549(c) contains an exception to avoidance under § 549, this exception does not apply here because the Thurgoods were not good faith purchasers. They were straw buyers for the Head Defendants in exchange for a kick back. Nor are the Washington Mutual Defendants protected under § 549(c). They were not purchasers but were mortgage lenders. Moreover, § 549(c) is a very narrow exception. *In re Ward,* 837 F.2d 124, 127 (3rd Cir.1988). Furthermore, the evidence presented in this case has established that the Washington Mutual Defendants knew of the existence of this bankruptcy case before they made the loans to the Thurgoods.

■ The court is satisfied that Walker has standing to utilize § 549 powers pursuant to § 522(h) of the Bankruptcy Code.[4] Walker fully disclosed in her bankruptcy schedules the 84th Street and 37th Street properties and also claimed them as exempt. The transfers to the Thurgoods were avoidable by the chapter 13 trustee who has not attempted to avoid these transfers. Section 522(h) must be read in conjunction with § 522(g)[5], which declares that a debtor who has made a voluntary transfer of property or has concealed such property does not have the ability to utilize § 549. In this case, Walker's transfers by warranty deeds were not made voluntarily. The transfers resulted from the scam perpetrated upon Walker. Walker also never concealed her property interests in the 84th Street and 37th Street properties.

The court therefore concludes that the transfers of ownership to the 84th Street and 37th Street properties to the Thurgoods are void, in violation of §§ 362(a)(3) and 549(a) of the Bankruptcy Code.

### CROSS COMPLAINTS OF NON–DEBTOR PARTIES

■ The court declines to address the cross complaints between the non-debtor parties, consisting of the following: Long Beach/Washington Mutual versus Thurgoods; Thurgoods versus Long Beach/Washington Mutual; Thurgoods

---

**3.** The only reason this case is pending is because of this adversary proceeding.

**4.** § 522(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if
 (1) such transfer is avoidable by the trustee under section ... 549 ...; and
 (2) the trustee does not attempt to avoid such transfer.

**5.** § 522(g) ... the debtor may exempt under subsection (b) of this section property that the trustee recovers ... to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
 (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
 (B) the debtor did not conceal such property.

versus Alliance/Mercury; and Alliance/Mercury versus Head Defendants and Thurgoods. The court further declines to address any other claims which any of these non-debtors may have against each other.

 It is questionable if this court has any jurisdiction to address these cross complaints. They are not core proceedings. A core proceeding is a proceeding "arising under" title 11 and must involve a cause of action created by a statutory provision of title 11 or a proceeding which, by its nature, could only arise in the context of a bankruptcy case. *Diamond Mortgage Corp. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990). At best, these disputes between the non-debtor parties fall within the category of "non-core related to" proceedings. Judge Goldgar in *In re Mission Bay Ski and Bike, Inc.,* 398 B.R. 250, 253 (Bankr. N.D.Ill.2008), declared:

> The Seventh Circuit interprets "related to" jurisdiction more narrowly than other circuits. The court does so "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re FedPak Sys. Inc.,* 80 F.3d 207, 214 (7th Cir.1996); *see also Home Ins. Co. v. Cooper & Cooper Ltd.,* 889 F.2d 746, 749 (7th Cir.1989).

The disputes in the cross complaints do not concern property of this chapter 13 estate and do not affect the rights of the creditors of this chapter 13 estate. Moreover, the issues in the cross complaints concern some parties who are not even named in this adversary proceeding, including Charles Head, United General Title Insurance Co., and Lenders First Choice. In addition, the Thurgoods did not testify at the trial, and the extent of their involvement, if any, in this scam was not ascertained.

 In *Pacor Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984), the court declared the following:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.

*Pacor* was embraced by the Seventh Circuit in *In re Xonics,* 813 F.2d 127, 131 (7th Cir.1987).

 Finally, and solely for the sake of argument, even if this court has "related to" jurisdiction, it would decline to address these non-debtor disputes and would abstain pursuant to 28 U.S.C. § 1334(c)(1). Bankruptcy courts are willing to abstain in situations in which their jurisdiction is in doubt. Susan V. Kelley, Ginsberg & Martin on Bankruptcy, § 1.03[C][1][b], fn. 394 (5th ed.2008).

For all of these reasons, the court declines to address the issues presented by the non-debtor parties in their respective cross complaints.

### THE REMEDIES

 The court's goal is to place Walker as closely as it can in the same position she was before the scam. As Judge Easterbrook recently commented in *Leibowitz v. Great American Group Inc.,* 559 F.3d 644 (7th Cir.2009):

> A victim of fraud is entitled to set aside the contract and have everyone's interests restored to the state preceding the fraud.

By the same token, the attorneys for Walker and for Washington Mutual Defendants, in their post-trial briefs, have recognized that Walker received some benefits which resulted from what has transpired—namely, the payment by Washington Mutual Defendants of the bal-

ances due on Walker's mortgages with Universal Mortgage Corp. (84th Street property) and with HFC (37th Street property). Their payment of certain other encumbrances on these properties, consisting of accrued unpaid real estate taxes, also benefitted Walker. Finally, Thomas J. King, who is the chapter 13 trustee, received payment of the balance needed to complete Walker's chapter 13 plan, which he continues to hold pending a determination of this adversary proceeding. The court has computed these payments made by the Washington Mutual Defendants which benefitted Walker as follows:

84th Street Property
– payment to Universal
 Mortgage Corp. of the
 mortgage balance $71,116.87
– payment to the City of
 Milwaukee for unpaid real
 estate taxes $ 1,170.85

 Total $72,287.72 (Exhibit 30)

37th Street Property
– payment to HFC of the
 mortgage balance $49,781.49
– payment to the City of
 Milwaukee for unpaid real
 estate taxes $ 8,725.63
– payment to Thomas J. King,
 chapter 13 trustee, of balance
 required to complete
 Walker's chapter 13 plan $ 8.907.15

 Total $67,414.27 (Exhibit 33)

The attorneys for Walker and Washington Mutual Defendants also agree that Washington Mutual Defendants[6] are entitled to receive a security interest for these beneficial payments. Walker's attorney asserts that the appropriate remedy would be an equitable lien. Washington Mutual Defendants' attorney states that it should receive a mortgage and mortgage note to secure this obligation and also asserts that accrued interest should be added. The

court is satisfied that it has the authority to require Walker to enter into mortgages and mortgage notes under terms and conditions identical to those contained in her prior mortgages and mortgage notes with Universal Mortgage Corp. and HFC. That would be consistent with the goal of placing her in the position she was prior to the scam. However, the court is less confident that it has the authority to require Washington Mutual Defendants to enter into such mortgages and mortgage notes involuntarily.

The court concludes that the appropriate remedies in this case are as follows:

1. The conveyances by warranty deeds from Walker to the Thurgoods of the 84th Street and 37th Street properties are null and void *ab initio* and shall be stricken from the records of the Milwaukee County Register of Deeds. The legal descriptions of these properties are as follows:

Lot 40, in Block 14, in Menomonee River Hills, being a part of the South½ of Section 21, in Township 8 North, Range 21 East, in the City of Milwaukee.

**Property Address: 6589 North 84th Street, Milwaukee, WI 53224–5403**

Lot Seven (7) in Block Three (3) in Orchard Grove Continuation, being a Subdivision of apart of the North West One–Quarter (1/4) of the Section Twelve (12), in Township Seven (7) North, Range Twenty–One (21) East, in the City of Milwaukee.

**Property Address: 3502 North 37th Street, Milwaukee, WI 53216**

---

6. Washington Mutual Defendants in footnote 1 of its post-trial memorandum brief, informed the court that on September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") as receiver seized Washington Mutual Bank and that the servicing rights for the subject loans were purchased by JPMorgan Chase Bank and, further, that these loans are presently owned by third party investors. Wherever reference is made in this decision regarding Washington Mutual Defendants' entitlement to repayment from Walker for the payments made which benefitted Walker, it shall mean Washington Mutual Defendants and its successors in interest and/or assignees.

The mortgages from the Thurgoods to the Washington Mutual Defendants in connection with these transactions are also null and void and shall be stricken from the records of the Milwaukee County Register of Deeds. The documents entered into by Walker entitled "Sales and Purchase Agreement—Contract of Sale" for the 84th Street and 37th Street properties are also null and void. No ruling is made in connection with the "Fixed/Adjustable Rate Notes" signed by the Thurgoods to the Washington Mutual Defendants for the 84th Street and 37th Street properties (Exhibits 12 and 21) except that any provisions in these notes declaring that the notes are secured by mortgages on the 84th Street and 37th Street properties are null and void.

2. As security to Washington Mutual Defendants for payments which they made and which benefitted Walker, Washington Mutual Defendants shall have thirty (30) days from the date of this decision to decide if they agree to enter into separate mortgage notes and mortgages on the following basis:

a. *84th Street Property.* A mortgage on the 84th Street property and a mortgage note for $72,287.72 plus accrued interest commencing August 25, 2006 (date of real estate sale to the Thurgoods). The mortgage and mortgage note shall be under terms and conditions (including interest rate) identical to those contained in Walker's prior mortgage note and mortgage with Universal Mortgage Corp. starting September, 2006 (the month following the voided real estate sale to the Thurgoods). Mortgage note payments under the new mortgage note shall start in **July, 2009.** If Washington Mutual Defendants agree to enter into the proposed mortgage and proposed mortgage note with

Walker, the parties shall forthwith execute the appropriate documents. If the Washington Mutual Defendants decline to enter into the proposed mortgage and proposed mortgage note within the thirty (30) day deadline, they shall instead be granted an equitable lien on the 84th Street property in the amount of $72,287.72 together with 7% interest accruing as of August 25, 2006 (date of voided real estate sale to the Thurgoods).

b. *37th Street Property.* A mortgage on the 37th Street property and a mortgage note for $67,414.27 plus accrued interest commencing August 25, 2006 (date of real estate sale to the Thurgoods). The mortgage and mortgage note shall be under terms and conditions (including interest rate) identical to those contained in Walker's prior mortgage note and mortgage with HFC starting September, 2006 (the month following the voided real estate sale to the Thurgoods). Mortgage note payments under the new mortgage note shall start in **July, 2009.** If Washington Mutual Defendants agree to enter into the proposed mortgage and proposed mortgage note with Walker, the parties shall forthwith execute the appropriate documents. If the Washington Mutual Defendants decline to enter into the proposed mortgage and proposed mortgage note within the thirty (30) day deadline, they shall instead be granted an equitable lien on the 37th Street property in the amount of $67,414.27 together with 7% interest accruing as of August 25, 2006 (date of voided real estate sale to the Thurgoods).

3. The counterclaim of Alliance/Mercury against Walker is dismissed on its merits.

4. The cross complaints between the non-debtor parties are dismissed, without prejudice.

5. Walker's claim for damages against all of the defendants is dismissed, without prejudice.

This decision constitutes the court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

A separate order for judgment in accordance with this court's decision shall be issued.